IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAVID MOORE | § | |
| TDCJ-CID #801362 | § | |
| | § | |
| v. | § | C.A. NO. C-03-330 |
| | § | |
| SERGEANT PALACIOS AND | § | |
| OFFICER GONZALES | § | |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In this § 1983 civil rights action, plaintiff claims that defendants knowingly interfered with his First Amendment right of access to the courts and retaliated against him for exercising that right. (D.E. 1). Defendants move for summary judgment to dismiss plaintiff's claims for failure to state a claim and on the grounds of qualified immunity. (D.E. 141). Plaintiff has filed a response in opposition. (D.E. 142). For the reasons stated herein, defendants' motion for summary judgment is GRANTED, and plaintiff's claims are dismissed.

**I.  JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331. Upon consent of the parties, (D.E. 21, 56), this case was reassigned to a United States Magistrate Judge to conduct all further proceedings, including entry of final judgment. (D.E. 120).[1] See 28 U.S.C. § 636(c).

**II.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is in the custody of the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"), and at all times relevant to the facts of this lawsuit was

---

[1] Originally the case was assigned to Magistrate Judge B. Janice Ellington. (D.E. 22, 39, 59). However, on June 16, 2006, Magistrate Ellington was recused, (D.E. 117), and on June 22, 2006, the case was reassigned to the undersigned. (D.E. 120).

incarcerated at the McConnell Unit in Beeville, Texas, where he is housed currently.  He filed

suit on September 2, 2003, naming as defendants: (1) Sergeant Marco A. Palacios; (2) Officer

Angela Erie Gonzales; (3) Lieutenant Garcia; (4) John Doe officers alleged to have been

involved in an excessive use of force; and (5) John Doe mail room personnel alleged to have

misquoted postal fees and obstructed mail service.  (D.E. 1, at 3).  Following a December 17,

2003  Spears[2] hearing, all of plaintiff's claims were dismissed, save and except his retaliation

claim against Sergeant Palacios.  (D.E. 23).

On October 22, 2004, plaintiff was granted leave to amend his complaint to name Officer

Gonzales as a defendant.  (D.E. 45).

Defendants filed the instant motion for summary judgment on October 13, 2006.  (D.E.

141).  Plaintiff filed his response on November 1, 2006.  (D.E. 142).

### III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following:

Ex. 1:  Affidavit of Terry Laskie, TDCJ Program Specialist, testifying as to plaintiff's offenses, classification, and mandatory release eligibility;

Ex. 2:  Affidavit of Daniel Fernandez, Major, McConnell Unit, fact witness;

Ex. 3:  Plaintiff's TDCJ disciplinary records for the June 11, 2003 incident;

Ex. 4:  TDCJ Disciplinary Rules and Procedures for Offenders;

Ex. 5:  Plaintiff's deposition transcript;

Ex. 6:  Officer Gonzales' deposition transcript;

Ex. 7:  Sergeant Palacios' deposition transcript;

---

[2] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

Ex. 8:  Grievances filed by plaintiff; and

Ex. 9:  TDCJ "UCR-06 " screen listing plaintiff's disciplinary violations.

(D.E. 141, Exs. 1-9).

The following facts are not in dispute:

Plaintiff entered the TDCJ on October 21, 1997.  (D.E. 141, Ex. 1 at ¶ 2).  He is not eligible for release to mandatory supervision.[3]  Id.  He is not eligible for parole consideration until 2011.[4]  Id.

On June 11, 2003, plaintiff had a lay-in pass to go to the law library from 12:00 to 2:00 p.m.  (D.E. 141, Ex. 5, at 37:21-23).  At approximately 11:45 a.m., he walked up to gates 18-19, just as Officer Gonzales was closing them for security reasons.  Id. at 38:2-25.  Plaintiff asked Officer Gonzales why she was closing the gates.  Id. at 39:13-15.  He inferred that she had closed the gates "maliciously" because she saw him carrying his typewriter and other legal materials.  Id. at 39:22-40:9.  Once the gates were closed, plaintiff was not allowed to pass through the gate, despite his lay-in pass.  Id. at 42:14-18.

Plaintiff confronted Officer Gonzales about her allegedly "shutting" the gate on him.  Id. at 44:5-15.  He contends that the gate was not yet closed when he went through it, and that she slammed it right when he approached, almost hitting him.  Id. at 45:9-12.  He explained that he

---

[3] Plaintiff was convicted of aggravated sexual assault of a child.  Pursuant to Tex. Code of Criminal Procedure art. 42.12 § 3g(a)(1)(E), prisoners convicted of aggravated sexual assault are not eligible for mandatory release consideration.

[4] "An inmate serving a sentence for an offense described by Section 3g(a)(1)(A), (C), (D), (E), (F), (G), or (H), Article 42.12, Code of Criminal Procedure, ... is not eligible for release on parole until the inmate's actual calender time served, without consideration of good conduct time, equals one-half of the sentence or 30 years, whichever is less, but in no event is the inmate eligible for release on parole in less than two calender years."  Tex. Gov't Code. Ann. § 508.145(d).

had a lay-in pass to the library and accused her of impeding his access to the courts.  Id. at 45:16-20.  He told her that he was going to file a lawsuit against her if she continued to keep the gate shut.  Id. at 45:21-24.

After approximately five to ten minutes, plaintiff observed Officer Gonzales let a Hispanic inmate with a computer generated pass go through the gate.  Id. at 66:2-5.  Later, chow hall traffic resumed from the other side of the gates and offenders were allowed to pass through the gates; however, Officer Gonzales would still not let plaintiff pass through to the law library.  Id.  Plaintiff then went to the picket officer, Officer Rodriguez, and asked her to call for a supervisor.  Id. at 48:1-5, 66:15-19.  He wanted to know why he was still being detained.  Id.

When Sergeant Palacios arrived, he immediately started questioning plaintiff about grooming violations and needing a haircut.  Id. at 48:12-22.  Plaintiff was permitted through the gates sometime between 12:15 and 12:30.  Id. at 43:4-8.

After the incident occurred, plaintiff prepared a document entitled "Cease and Desist" in which he described the events under oath.  As to Officer Gonzales, he alleged that she:

> ... impeded/denied me access to the law library and became belligerent, raising her voice, literally slamming the gate right in front of me; causing several offenders waiting in line for commissary to start laughing at the situation.  As I recall, the other offenders standing there were from Y-dorm: Bond, and Caughron, who also were impeded/denied access.  Offender Ball vocalized (lives on Z dorm,) "You must be out of your mind ... Letting people go to chow, but not to their lay-ins."  This fact about the chow traffic being let go was particularly frustrating and disturbing, combined with the exposure to direct sunlight and heat of the day; a factor of some consequence: by the time I did arrive at the law library, I was soaking wet w/ sweat.

(D.E. 1, at 16 (copy of plaintiff's "Cease & Desist" notice).

4

Plaintiff claims that Sergeant Palacios arrived at 11:55 a.m.  <u>Id.</u> at 16.  He announced that Officer Barrera did not want any traffic, and ordered the offenders who were waiting in the commissary line by the gates to go back to their housing assignments.  <u>Id.</u> at 16.  At 12:10 p.m., plaintiff noticed traffic was moving again, so he presented his lay-in pass to Officer Gonzales.  <u>Id.</u>  According to plaintiff:

> ... Palacios told her to take down my information claiming that I
> had refused to obey an alleged order he had claimed he had given
> me last week: to get a hair cut.  I was extremely upset, looked him
> in the eye, called him the racist, liar that he is, told him the case
> was "trash," that I hoped the case went "platinum," instructed Ms.
> Gonzales, A. to be sure and document the time she was writing the
> case, that it will help prove my denial of access to courts, as
> Palacios was impeding my access AND now retaliating against yet
> another white person.  It is important to note that during this
> denial, a Hispanic offender was allowed through the gate,
> witnessed by offender Ball, also.  I left for my lay-in – fortunately
> – without further altercation with Sergeant Palacios.

<u>Id.</u>

On June 12, 2003, plaintiff was charged with the disciplinary offense of failing to obey an order.  (D.E. 141, Ex. 3, at Bates No. 710).  In particular, Officer Gonzales charged that she had given plaintiff an order to get a hair cut, but that he refused to do so.  <u>Id.</u>  A disciplinary hearing was held on June 14, 2003.  <u>Id.</u>  Plaintiff pled not guilty.  <u>Id.</u>  At the hearing, he testified:

> I ain't get a haircut because you Mexicans are retaliating because
> you don't have a white barber.  Capt. Nelson knows about it.  You
> f***ing Mexican won't stop it but in court you'll change your
> way.

<u>Id.</u> at Bates No. 713.

According to Officer Gonzales, she ordered plaintiff to get a haircut at 12:30 p.m., and the barbershop was open at that time, but plaintiff refused to go.  <u>Id.</u> at Bates No. 714.  He was

found guilty as charged and as punishment lost twenty days of commissary and twenty days of recreation.  Id. at Bates No. 710.

On June 13, 2003, plaintiff filed a Step 1 grievance challenging the disciplinary conviction. (D.E. 141, Ex. 9, at Bates No. 126-27).  According to plaintiff, Officer Gonzales never ordered him to get a haircut, and Sergeant Palacios "put her up" to writing the disciplinary case.  Id.  at 126.  On July 9, 2003, plaintiff's Step 1 grievance was denied.  Id. at Bates No. 129.  On July 15, 2003, plaintiff filed a Step 2 grievance.  Id. at Bates No. 117-18.  His Step 2 grievance was denied on July 28, 2003.  Id. at 118.

## IV.  DISCUSSION

**A.      Summary Judgment Standard of Review.**

Rule 56 of the Federal Rules of Civil Procedure applies to federal habeas corpus cases. Clark v. Johnson, 202 F.3d 760, 764 (5th Cir. 2000).  Summary judgment is appropriate where there is no disputed issue of material fact, and one party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  A court must consider the record as a whole by reviewing all pleadings, depositions, affidavits, and admissions on file, and by drawing all reasonable inferences in favor of the party opposing the motion.  Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Williams v. Adams, 836 F.2d 958, 960 (5th Cir. 1988).  The controverted evidence must be

viewed in the light most favorable to the non-movant, and all reasonable doubts must be resolved

against the moving party.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990).

If the moving party makes the required showing, then the burden shifts to the non-movant

to show that summary judgment is not appropriate.  Matsushita Elec. Indus. Co. v. Zenith Radio

Corp., 475 U.S. 574, 587 (1986); Fields v. City of S. Houston, 922 F.2d 1183, 1187 (5th Cir.

1991).  The non-movant cannot rest on the mere allegations of the pleadings to sustain his

burden, but must set forth material controverted facts in the response to the motion for summary

judgment.  Fed. R. Civ. P. 56(e); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).

Summary judgment is proper if the non-movant fails to make a showing sufficient to establish

the existence of an element essential to his case on which he bears the burden of proof.

ContiCommodity Servs., Inc. v. Ragan, 63 F.3d 438. 441 (5th Cir. 1995); Celotex, 477 U.S. at

322-23.

**B.     Legal Standard.**

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law.  West v. Atkins, 487 U.S.

42, 48 (1988); see also Biliski v. Harborth, 55 F.3d 160, 162 (5th Cir. 1995) (per curiam).  An

action may be dismissed for failure to state a claim when it is clear that the prisoner can prove no

set of facts in support of his claim entitling him to relief.  Oliver v. Scott, 276 F.3d 736, 740 (5th

Cir. 2002) (citation omitted).

**C.     Official Capacity Claims And Injunctive Relief.**

Plaintiff has sued defendants in their official and individual capacities.  See (D.E. 1).  He

seeks monetary damages and injunctive relief ordering defendants to expunge his disciplinary

record of all offenses.

A suit against a prison employee in his official capacity is the same as a suit against the

entity the employee represents.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).  The Eleventh

Amendment bars a suit for money damages against a state or state agency.  Seminole Tribe of

Florida v. Florida, 517 U.S. 44, 54 (1996).  A judgment may not be entered against a state officer

in his official capacity for violating federal law in the past.  Puerto Rico Aqueduct & Sewer

Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages,

those claims are barred by the Eleventh Amendment, and they are dismissed.

**D.     Qualified Immunity.**

Defendants move for summary judgment on the grounds of qualified immunity.  The

qualified immunity determination involves a two-step analysis: first, "'whether the facts alleged,

taken in the light most favorable to the party asserting the injury, show that the officer's conduct

violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003)

(quoting Price v. Roark, 256 F.3d 364, 369 (5th Cir. 2001)).  If a constitutional violation is

alleged, the Court must next determine "whether the right was clearly established  – that is

'whether it would be clear to a reasonable officer that his conduct was unlawful in the situation

he confronted.'"  Id. at 624 (quoting Price, 256 F.3d at 369).  Once defendants have invoked the

defense of qualified immunity, the burden shifts to plaintiff to show that the defense is

8

inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

The threshold question in a qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged.  Saucier v. Katz, 533 U.S. 194, 200 (2001).

### 1.      Denial Of Access To The Courts.

Plaintiff claims that both Officer Gonzales and Sergeant Palacios denied him access to the courts when they caused him to wait at the 18-19 gates on June 11, 2003 when he had a lay-in pass for the law library.

### A.      Step 1: Constitutional Violation.

Prisoners have a constitutionally protected right of access to the courts.  See Lewis v. Casey, 518 U.S. 343, 350 (1996) (citing Bounds v. Smith, 430 U.S. 817, 821 (1977)).  The right does not guarantee any "particular methodology but rather the conferral of a capability – the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts."  Id. at 356; see also Jones v. Greninger, 188 F.3d 322, 325 (5th Cir. 1999) (per curiam) (the right provides a reasonable opportunity to file nonfrivolous legal claims challenging convictions or conditions of confinement).  Because the right of access is not a "freestanding right," the plaintiff must demonstrate actual injury resulting from an alleged denial of access to the courts.  Lewis, 518 U.S. 351; Chriceol v. Phillips, 169 F.3d 313, 317 (5th Cir. 1999).  Without a showing of an actual injury, a plaintiff lacks standing to pursue a claim of denial of access to the courts.  Lewis, 518 U.S. at 349.

To meet the standing requirement, "plaintiff must allege *personal injury* fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief."

Raines v. Byrd, 521 U.S. 811, 818 (1997) (quoting Allen v. Wright, 468 U.S. 737, 751 (1984))

(italics in original).  Plaintiff "must establish that he has a 'personal stake' in the alleged dispute

and that the alleged injury suffered is particularized as to him."  Id. at 819 (citation omitted).

Specifically, to succeed on a claim of denial of access to the courts, he must show that he lost an

actionable claim, or was prevented from presenting such a claim because of the alleged denial.

See Lewis, 518 U.S. at 356.  He must show "that his position as a litigant was prejudiced" as a

direct result of the denial of access.  Eason v. Thaler, 73 F.3d 1322, 1328 (5th Cir. 1996) (per

curiam).

        In this case, plaintiff has failed to demonstrate any prejudice in any pending litigation

challenging either the fact or conditions of his confinement.  As admitted by plaintiff, he had no

constitutional right to not be required to wait at the gates for fifteen minutes on June 11, 2003.

(See D.E. 142, at 6, ¶ 13).  He suffered no consequences as a result of the delay.  In fact, plaintiff

testified that, once the gates were opened, he went to the law library and prepared the "Cease and

Desist" notice.  The notice is dated June 13, 2003, and he sent a copy to the McConnell Unit

Warden, an Assistant United States Attorney, and to United States Magistrate Judge B. Janice

Ellington regarding C.A. No. 0-01-415, and United States Magistrate Judge Jane Cooper-Hill

regarding C.A. No. C-02-038.  (D.E. 1, at 19).  He then filed this lawsuit on September 2, 2003.

Id. at 1.  Between May 2002 and December 2003, he filed eighteen grievances, many raising

similar complaints: harassment and retaliation by Hispanic guards and failure of officers to

honor his "official" lay-in passes to the library.  (D.E. 141, Ex. 8 at Bates No. 47-338).  He

testified that he has been to the law library hundreds of times.  (D.E. 141, Ex. 5 at 37:16-20).

There is no evidence in the record that he has ever been denied access to the law library or the

courts, and, even if there was, there is certainly no evidence of prejudice in any nonfrivolous

litigation.  As such, plaintiff fails to state a constitutional claim of denial of access to the courts.

Lewis, 518 U.S. at 349.

      **B.     Step 2: Objective Reasonableness.**

      For a right to be clearly established under the second step of the qualified immunity

analysis, "[t]he contours of that right must be sufficiently clear that a reasonable official would

understand that what he is doing violates that right."  Anderson v. Creighton, 483 U.S. 635, 640

(1987).  However, when the plaintiff fails to state a constitutional violation, as in this case, the

Court need not examine whether the defendants' actions were reasonable.  See Saucier, 533 U.S.

at 201 (if the facts alleged do not establish that the officer's conduct violated a constitutional

right, then the qualified immunity analysis need proceed no further and qualified immunity is

appropriate).  Plaintiff was not prejudiced in any nonfrivolous pending litigation such that he has

failed to state a claim for denial of access to the courts.  Jones, 188 F.3d at 325.  Accordingly,

defendants are entitled to qualified immunity on plaintiff's denial of access to the courts claim,

and their motion for summary judgment on this claim is GRANTED.

      **2.     Retaliation.**

      Plaintiff claims that defendants retaliated against him for exercising his First Amendment

rights, in particular, for complaining to supervisors of their allegedly unconstitutional conduct,

and for filing grievances and lawsuits.

      **A.     Step 1: Constitutional Violation.**

      To prevail on a retaliation claim, an inmate must establish four elements: "(1) a specific

constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her

exercise of that right, (3) a retaliatory adverse act, and (4) causation." McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated.  Jones, 188 F.3d at 325.  Moreover, the inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  The inmate must produce direct evidence of motivation or, the more probable scenario, allege a chronology of events from which retaliation may plausibly be inferred.  Id. (citation omitted).  Causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

In addition, the Fifth Circuit has recently held that an inmate's retaliation claim must allege more than a *de minimis* adverse act.  Morris v. Powell, 449 F.3d 682, 684-85 (5th Cir. 2006).  In Morris, the plaintiff alleged that he had been assigned to a less desirable job in the kitchen, from pot scrubber to butcher, in retaliation for filing complaints about a commissary official.  Id. at 684.  After an appeal and remand, the district court found as a matter of first impression in the Fifth Circuit that a prisoner must allege more than a *de minimis* retaliatory act to proceed with a claim of retaliation.  Id.  The district court further found, without discussion, that Morris' alleged retaliation as evidenced by assignment to a less desirable job was *de minimis*, and dismissed his claim.  Id.

On appeal, the Fifth Circuit noted that, in the context of First Amendment claims, courts had often addressed the "quantum" of retaliation necessary to support a § 1983 claim.  See id. at 685-86.  It noted that the District of Columbia Circuit has held that an inmate's retaliation claim must allege acts that "would chill or silence a person of ordinary firmness from future First

12

Amendment activities." <u>Id.</u> at 685 (citation omitted).  The Fifth Circuit concluded that in Morris' case, even if the job transfers were motivated by retaliation and he suffered a few days discomfort, there was no evidence that the job transfers were more than *de minimis.*  <u>Id.</u> at 687.

In this case, it cannot be said that plaintiff's delay at the gate for fifteen minutes and single disciplinary conviction with twenty days loss of commissary and recreation privileges is so chilling or disturbing, that it would silence a person of ordinary firmness from future First Amendment activities.  <u>Id.</u> at 685-86.  To the contrary, there is no evidence that plaintiff was silenced in any manner.

### i. Officer Gonzales.

Concerning the closing of the gates on June 11, 2003, plaintiff admits that Officer Gonzales told him she needed to close the gates because of traffic, but he assumed she did so "maliciously" because she saw his typewriter and legal paper and did not want him to go to the law library.  (D.E. 141, Ex. 4, at 39:22-40:9.).  However, he provides no explanation of why Officer Gonzales would want to treat him maliciously.  He does not detail a past history of trouble between himself and this officer.  In fact, in his Cease & Desist notice, he describes Officer Gonzales as "an officer who identified herself as 'Gonzales, A.'"  (D.E. 1 at 16).  Had plaintiff known Officer Gonzales beforehand, or had there been a chronology of events from which retaliation could be inferred, he would not have introduced her as "an officer who identified herself as...."  Plaintiff fails to establish any retaliatory motive.  Officer Gonzales simply stopped him at the gate per orders, be it from Sergeant Palacios or another ranking official, and any delay to the law library was *de minimis*.  The delay to the law library cannot support a retaliation claim.

To the extent plaintiff claims that Officer Gonzales filed a false disciplinary case against him in retaliation, again, he fails to demonstrate any history of animosity or incidents between them from which a retaliatory motive could be inferred.  Even if this one disciplinary case for failure to obey an order was false and Officer Gonzales wrote it for Sergeant Palacios, as alleged by plaintiff, there is still no chronology of events from which retaliation can be inferred. Plaintiff fails to state a claim of retaliation against Officer Gonzales.  Accordingly, Officer Gonzales is entitled to qualified immunity, and plaintiff's claim of retaliation against this defendant is dismissed.

**ii.  Sergeant Palacios.**

Plaintiff also asserts that Sergeant Palacios ordered Officer Gonzales to file the failure to get a haircut case against him, and that Sergeant Palacios was motivated by retaliation.  In his Cease & Desist notice, plaintiff details events that occurred *after* the disciplinary case was filed, when he went to Sergeant Palacios and argued with him about the lack of white barbers and Sergeant Palacios repeatedly asked him to "just get a haircut," and even offered to clear out a barbershop because plaintiff felt intimated by the "gaggle of gang members" in it.  (D.E. 1 at 17-18).  Moreover, at the disciplinary hearing, plaintiff did not argue that the charges against him were false, but instead, appeared to admit that he did not get a haircut because there were no "white barbers."  (D.E. 141, Ex. 8 at Bates No. 125).  There are no grievances against Sergeant Palacios prior to June 2003.  (D.E. 141, Ex. 8).  Again, there is simply no chronology of events from which retaliation can be inferred.

Assuming Sergeant Palacios ordered Officer Gonzales to file a false disciplinary case against plaintiff in retaliation for plaintiff complaining about the gate incident and otherwise

14

exercising his First Amendment rights, the retaliation was *de minimis*.  Here, the loss of commissary and recreation for twenty days each is no more than *de minimis* retaliation.  See Morris, 449 F.3d at 687.  Accordingly, Sergeant Palacios is entitled to qualified immunity, and is granted summary judgment in his favor.

**D.     Conspiracy.**

Plaintiff has suggested that defendants conspired to violate his right of access to the courts.

To allege a claim of conspiracy to deprive one of his constitutional rights, a plaintiff must allege, "(1) a conspiracy involving two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or deprivation of any right or privilege of a citizen of the United States."  Hilliard v. Ferguson, 30 F.3d 649, 652-53 (5th Cir. 1994).  Where all of the defendants are members of the same collective entity, however, the conspiracy does not involve two or more people.  Id. at 653; see also Moody v. Jefferson Parish Sch. Bd., 803 F. Supp. 1158, 1166 (E.D. La. 1992) (School Board, Principal, Vice-Principal, and various teachers are all employed by the Jefferson Parish School Board and, thus, are a single entity), aff'd, 2 F.3d 604 (5th Cir.1993).

Plaintiff produces no facts, other than his personal belief, that there is a conspiracy, and such allegations fail to state a claim.  McAfee v. 5th Circuit Judges, 884 F.2d 221, 222 (5th Cir. 1989) (conclusory allegations lacking reference to material facts are not sufficient to state a claim of conspiracy under section 1983).  Moreover, both defendants are members of the same collective entity, such that plaintiff fails to state a conspiracy claim.  Hilliard, 30 F.3d at 653.

15

To the extent plaintiff is raising a conspiracy claim, it is DENIED.

## V. CONCLUSION

For the reasons stated herein, defendants' motion for summary judgment, (D.E. 141), is GRANTED.  Plaintiff's claims for money damages against defendants in their official capacities are barred by the Eleventh Amendment, and defendants are granted summary judgment in their favor dismissing those claims.  Defendants are granted summary judgment in their favor on plaintiff's claims of denial of access to the courts, retaliation, and conspiracy.  Plaintiff's claims against defendants in their individual capacities for money damages and in their official capacities for injunctive relief are dismissed with prejudice.

ORDERED this 27th day of November 2006.

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE